**WO**

1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8   JEFFREY NOEM VETA,                     )
                                           )
9              Petitioner,                 )
                                           )   No.  CV 05-336-TUC-CKJ
10  vs.                                    )
                                           )
11  CHUCK RYAN, et al.,                    )        **ORDER**
                                           )
12             Respondents.                )
    _____   )

13

14        Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus by a

15  Person in State Custody Pursuant to 28 U.S.C. § 2254.  Respondents have filed an

16  Answer and Petitioner has filed a Reply.

17

18  *Factual and Procedural Background*

19        In April, 1996, Petitioner Jeffrey Noem Veta ("Veta") was indicted on thirteen

20  counts including seven counts of sexual conduct with a minor.

21        Veta was extradited from Kentucky and arrived in Arizona on February 20, 2002.

22  During an April, 2002, pre-trial conference, Veta's counsel, Larry Rosenthal

23  ("Rosenthal") indicated that Veta did not want to waive any speedy trial rights.  However,

24  counsel suggested a trial date in the first or second week of July.  Trial was scheduled for

25  July 9, 2002, which was beyond the speedy trial requirements of Ariz.R.Crim.P. 8.3(a)

26  and the Interstate Agreement on Detainers ("IAD"), A.R.S. § 31-481.

27        On June 19, 2002, Veta filed a pro se motion to dismiss pursuant to Rule 8.3(a) and

28  8.6, Ariz.R.Crim.P.  On June 20, 2002, Veta filed a pro se motion to dismiss pursuant to

the IAD. The trial court denied the motion, stating that counsel's explicit agreement to the trial date constituted a waiver or abandonment of Veta's rights under the IAD. Veta filed a petition for writ of habeas corpus with the Supreme Court of Arizona; that action was dismissed with instructions to file a petition for special action. Veta then petitioned for special action to the Court of Appeals of Arizona. The appellate court declined to accept jurisdiction. The Supreme Court of Arizona denied Veta's Petition for Review.

Veta also filed a state habeas corpus petition. The trial court denied relief and Veta appealed to the Court of Appeals of Arizona. The appellate court affirmed the trial court. The Supreme Court of Arizona denied Veta's Petition for Review.

Trial commenced on April 20, 2004. On May 3. 2004, Veta was found guilty of continuous child abuse, involving a minor in a drug offense, and two counts of sexual conduct with a minor under 15. Veta was found not guilty of furnishing obscene or harmful items to a minor and no verdicts were reached on three counts of sexual conduct with a minor under fifteen. On July 15, 2004, Veta was sentenced to consecutive, presumptive 20 year terms of imprisonment on Counts 1, 2, 4, and 5. Veta filed a timely notice of appeal of the judgment and sentence.

On August 20, 2004, Veta filed a Notice of Post-Conviction Relief and, on June 14, 2005, filed a Petition for Post-Conviction Relief raising claims of ineffective assistance of counsel for failing to assert Veta's speedy trial rights under the IAD and an illegal sentence pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). On October 21, 2005, the post-conviction court denied relief. On September 26, 2007, the Court of Appeals granted review but denied relief. Veta did not petition for further review and, on October 23, 2007, the Court of Appeals reinstated Veta's direct appeal.

On appeal, Veta asserted (1) the trial court erred in finding that defense counsel had waived Veta's speedy trial rights under article IV of the IAD; (2) he was not bound by counsel's agreement to a trial date outside the IAD time limit; (3) the trial court erred in failing to follow the procedure set out in the IAD, art. IV(c); (4) the State breached its

duty to see that the trial court complied with the IAD time limits; (5) the State "interfered" with defense counsel's conduct of the defense and violated Veta's right to counsel; (6) the trial court erred by giving a jury instruction on the definition of "hiding"because it was unsupported by the evidence; and (7) the trial court illegally enhanced his sentences when he allegedly received no notice of any dangerous crimes against children (DCAC) enhancement in the amended indictment. *See* Answer, Ex. I.

On June 30, 2008, the Arizona Court of Appeals affirmed Veta's convictions and sentences in a memorandum decision. On July 31, 2008, the Court of Appeals granted in part Veta's motion for reconsideration and corrected its June 30, 2008, decision. Review was denied by the Supreme Court of Arizona and the United States Supreme Court.

Meanwhile, on May 5, 2005, Veta filed a Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254. Following a stay to complete the state proceedings, Veta filed an Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. Veta has presented four claims for relief:

1.     Veta's Fourteenth Amendment Due Process liberty interest right was violated when Arizona failed to release him after time limits of Ariz.R.Crim.P. 8.3(a) and the IAD were exceeded. Veta states this claim in his Traverse as the trial court failed to release him after an objectively unreasonable determination of waiver.

2.     Veta's Sixth and Fourteenth Amendment rights to effective assistance of counsel was violated when Rosenthal, despite his agreement with Veta not to waive any of his speedy trial rights and invoking those rights, proposed a time frame outside Veta's time limits, effectively waiving Veta's speedy trial rights. In his Traverse, Veta asserts that counsel's conduct effected a waiver and lost Veta his right to dismissal of all charges with prejudice.

3.     Veta's Sixth Amendment Fair Trial protection and Fourteenth Amendment Due Process right was violated when, over defense objection, the trial court gave a "hiding" instruction unsupported by the evidence and denied Veta a new trial, contrary

to *State v. Noleen* and *Hicks v. Oklahoma*.

4.     Veta's Sixth and Fourteenth Amendment rights to Notice and Due Process were violated when he was sentenced under A.R.S. § 13-604.01 after receiving no notice of "DCAC" enhancement prior to trial in his Amended Indictment, contrary to *State v. Waggoner* and *Hicks v. Oklahoma*.

An Answer and Traverse have been filed.

*Statute of Limitations*

This Court must review claims consistent with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  The Court has previously determined that Veta's Petition timely filed.

*Standard of Review*

Federal courts may consider a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States.  *See Reed v. Farley*, 512 U.S. 339, 347, 114 S.Ct. 2291, 2296, 129 L.Ed.2d 271 (1994).  Indeed, a habeas corpus petition by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

- 4 -

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). General improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated a petitioner's Fourteenth Amendment right to due process. *See generally, Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991).

This Court must review claims consistent with the provisions of the AEDPA. "The Act limits the ability of federal courts to reexamine questions of law and mixed questions of law and fact." *Jeffries v. Wood*, 114 F.3d 1484, 1498 (9th Cir. 1997). Indeed, the AEDPA creates "an independent, high standard to meet before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 127 S.Ct. 2218, 2224, 167 L.Ed.2d 1014 (2007), *citations omitted*. This Court may only overturn a state court finding if a petitioner shows by clear and convincing evidence that the finding was erroneous. *See* 28 U.S.C. § 2254(e)(1). An "unreasonable application of clearly established law" exists if the state court identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the case. *See Taylor*.

*Exhaustion of State Remedies*

Before a federal court may review a petitioner's claims on the merits, a petitioner must exhaust his state remedies, i.e., have presented in state court every claim raised in the federal habeas petition. *See Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999) (a state prisoner in a federal habeas action must exhaust his claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). Exhaustion

of state remedies is required in order to give the "State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights . . . To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004), *internal quotation marks and citations omitted*.

In Arizona, exhaustion is satisfied if a claim is presented to the Arizona Court of Appeals. A discretionary petition for review to the Supreme Court of Arizona is not necessary for purposes of federal exhaustion. *Swoopes*, 196 F.3d at 1010; *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989) (in non-capital cases, state remedies are exhausted by review by the court of appeals). A claim is "fairly presented" if the petitioner has described the operative facts and legal theories on which his claim is based. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). In state court, the petitioner must describe not only the operative facts but also the asserted constitutional principle. The United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

Respondents acknowledge that each ground raised by Veta in his habeas petition was previously presented to the state court in Veta's direct appeal or his petition for PCR, and again in his petitions for review to the state appellate court. Respondents further acknowledge that Veta asserted a federal law basis for each claim in state court. The Court finds, therefore, that Veta has exhausted his state court remedies.

*Speedy Trial Limits and the IAD*

2    Veta asserts that his Fourteenth Amendment Due Process liberty interest protection

3 was violated when the State of Arizona failed to release him after the speedy trial limits

4 of Ariz.R.Crim.P. 8.3(a) and art. IV(c) of the IAD were exceeded. Indeed, Veta asserts

5 that his due process rights were violated when, after an objectively unreasonable

6 determination of waiver, the trial court failed to release him.

7    The IAD is a compact entered into by forty-eight states, the District of Columbia,

8 and the federal government to establish procedures for resolution of one jurisdiction's

9 outstanding criminal charges against another jurisdiction's prisoner. *See New York v.*

10 *Hill*, 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). Insofar as it is "'a

11 congressionally sanctioned interstate compact' within the Compact Clause of the United

12 States Constitution, Art I, § 10, cl. 3, the IAD is a federal law subject to federal

13 construction." *Id.*, *quoting Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87

14 L.Ed.2d 516 (1985). Federal habeas review of IAD violations is limited, however, to

15 errors constituting "a fundamental defect which inherently results in a complete

16 miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair

17 procedure." *Reed v. Farley*, 512 U.S. 339, 348, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994),

18 *quoting Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962));

19 *accord Cross v. Cunningham*, 87 F.3d 586, 587-88 (1st Cir.1996); *see also Hitchcock v.*

20 *United States*, 580 F.2d 964, 966 (1978) (to state a violation of the IAD cognizable in §

21 2254 or § 2255 habeas proceedings, the alleged violation must rise to the level of a

22 "fundamental defect" or have "prejudiced" the rights of the defendant).

23    There is nothing in the record to suggests that the alleged IAD violation constituted

24 a "fundamental defect" or resulted in a "complete miscarriage of justice." Veta does not

25 assert that the alleged IAD violation denied him the opportunity to secure a fair trial,

26 actually impaired his ability to prepare and present a defense, or to prosecute his appeal.

27 Rather, Veta asserts that his speedy trial rights were violated because he was not tried in

28 accordance with the deadlines of the IAD. Absent allegations of prejudice, however, his

claims are not cognizable under federal habeas review. *See e.g., Reed v. Farley*, 512 U.S. at 342 (holding that "a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement"); *Reilly v. Warden*, 947 F.2d 43, 44 (2d Cir.) (holding that violations of the Interstate Agreement on Detainers are not cognizable claims in habeas corpus petitions under 28 U.S.C. §§ 2254 and 2255), *cert. denied*, 502 U.S. 1115, 112 S.Ct. 1227, 117 L.Ed.2d 462 (1992); *Keeling v. Varner*, No. 99-CV-6565 (JBW), 2003 WL 21919433 at *5 (E.D.N.Y. June 17, 2003) (holding that absent a showing of prejudice, petitioner's claim that his speedy trial rights were violated because he was not tried in accordance with the IAD was not cognizable under federal habeas review) (unpublished), *aff'd*, 142 Fed. Appx. 506 (2d Cir.2005). The Court finds that Veta's claim is not cognizable on federal habeas review.

*Speedy Trial Limits, the IAD, and Ineffective Assistance of Counsel*

Although the Court has determined that Veta's claim is not cognizable on habeas review, the Court considers that, pre-*Reed*, the Ninth Circuit determined that the time requirements of the IAD "has its roots in the constitutional provision for speedy trial." *Carlson v. Hong*, 707 F.2d 367 (9th Cir. 1983) (per curiam). The Ninth Circuit has stated that the failure of a state court to follow the time requirements of the IAD constitutes a violation of federal law for § 2254 purposes. *Cody v. Morris*, 623 F.2d 101 (9th Cir. 1980). Because this Court is not aware of any published Ninth Circuit cases addressing this issue post-*Reed*, the Court finds it appropriate to address Veta's claim.[1]

As previously stated, Veta asserts that his due process rights were violated when

---

[1] *See Sun v. Stewart*, 242 F.3d 383 * 1 (9th Cir. 2000) (unpublished) (*citing Reed* for the assertion that "a state court's failure to observe the time periods of the IAD is not cognizable under § 2254 when defendant 'registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement").

the State of Arizona failed to release him after the speedy trial limits of Ariz.R.Crim.P. 8.3(a) and art. IV(c) of the IAD were exceeded. Indeed, Veta asserts that his due process rights were violated when, after an objectively unreasonable determination of waiver, the trial court failed to release him. Veta also asserts that counsel was ineffective in proposing a trial date after the expiration of the speedy trial limits, despite counsel's agreement with Veta not to waive any of his speedy trial rights. Veta asserts that counsel lost Veta his right to dismissal of all charges with prejudice.

In addressing the speedy trial issues raised in Veta's appeal of a petition for writ of habeas corpus, the Court of Appeals of Arizona stated:

> As the trial court correctly noted, Veta's habeas corpus petition was simply a repetition of the arguments he had made in his motion to dismiss. The petition merely reurged his arguments that Rule 8.3(a) and the IAD mandated dismissal of the charges – arguments the trial court had previously rejected. Notably, the same judge who had denied Veta's motions to dismiss also denied his habeas petition. That judge was familiar with the facts and issues raised in both Veta's motions and his petition.

> * * * * *

> * * * * *

> Rule 8.3(a) governs the speedy trial rights of "persons in prison . . . without the state" but charged with crimes in Arizona. That rule provides:

>> Within 90 days after receipt of a written request from any person charged with a crime and incarcerated without the state, or within a reasonable time after otherwise learning of such person's incarceration without the state, the prosecutor shall take action as required by law to obtain such person's presence for trial. Within 90 days after the defendant has been delivered into the temporary custody of the appropriate authority of this state, he or she shall be brought to trial.

> As the rule's comment makes clear, "violation of [the] time limit[] is ground for dismissal of the charges with prejudice under Rule 8.6." Rule 8.6 states: "If the court determines . . . that a time limit established by Rule[] . . . 8.3(a) . . . has been violated, it shall on motion of the defendant, or on its own initiative, dismiss the prosecution with or without prejudice."

> The IAD is "a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *Hill*, 528 U.S. at 111, 120 S.Ct. at 662, 145 L.Ed.2d at 564. "[T]he IAD is a federal law subject to federal construction." *Id*. When the charging jurisdiction, pursuant to IAD article IV(a), requests temporary custody of a prisoner to rsolve pending charges against him or her, "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state." § 31-481, IAD ar. IV(c). If the

- 9 -

prisoner is not brought to trial within that time, the IAD requires that the charges be dismissed with prejudice. *Id*, IAD art. V(c).

In *Hill*, as here, defense counsel agreed to a trial date beyond the time required by the IAD. Hill later moved to dismiss, arguing the IAD's time limit had expired. The trial court denied Hill's motion, but the New York Court of Appeals later reversed his convictions and ordered dismissal of the indictment. The Supreme Court reversed and held that defense counsel had effectively waived Hill's speedy trial rights under the IAD.

In so holding, the Court first observed "courts have agreed that a defendant may, at least under some circumstances, waive his right to object to a given delay under the IAD." 52 U.S. at 114, 120 S.Ct. at 663, 145 L.Ed.2d at 566. At issue in *Hill*, however, was whether defense counsel's actions could effect such a waiver. In concluding that they could, the Court reasoned, "As to many decisions pertaining to the conduct of the trial, the defendant is 'deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, "notice of which can be charged upon the attorney."'" *Id*. at 115, 120 S.Ct. at 664, 145 L.Ed.2d at 567, *quoting Link v. Wabash R.R. Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740 (1962), *quoting Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955, 958 (1880). The Court concluded that "[s]cheduling matters are plainly among those for which agreement by counsel generally controls" and that, "[a]bsent a demonstration of ineffectiveness, counsel's word on such matters is the last." *Id*.; *cf. State v. Nelson*, 157 Ariz. 187, 188-89, 755 P.2d 1175, 1176-77 (App. 1988) (defense counsel waived defendant's rights under IAD art. IV(e), the "anti-shuttling" provision).

The trial court did not err in ruling, pursuant to *Hill*, that defense counsel had effectively waived Veta's speedy trial rights under the IAD by agreeing to a trial date beyond the IAD's time limit. Similarly, we conclude that defense counsel also could and did waive Veta's speedy trial rights under Rule 8.3(a).

Although the provisions specify different time limits in which an out-of-state prisoner must be tried – 90 days under Rule 8.3(a), and 120 days under the IAD – the comment to Rule 8.3(a) states that the rule "is intended primarily to supplement the provisions of the [IAD]." Further, our supreme court has stated that "Rule 8.3(a) . . . must be read in light of the [IAD]." *State v. Gretzler*, 126 Ariz. 60, 69, 612 P.2d 1023, 1032 (1980), *overruled in part on other grounds, State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983). Accordingly, we fail to see why an attorney's waiver of the IAD time limit, which the Supreme Court deemed valid in *Hill*, would not also serve to waive Rule 8.3(a)'s time limit. *Cf. State v. Wells*, 638 N.W.2d 456, 461 (Minn.Ct.App. 2002) (defense counsel's agreement to delay omnibus hearing under state law beyond IAD's speedy trial time limit effectively waived that limit as well).

As noted above, the trial court did not specifically address Veta's Rule 8.3(a) arguments in its initial ruling denying Veta's motions to dismiss. Because Veta's attorney effectively waived Rule 8.3(a)'s speedy trial time, however, we find meritless Veta's argument that the trial court abused its discretion by not expressly addressing that rule. And, in view of the close relationship between Rule 8.3(a) and the IAD, that omission did not preclude the trial court from basing its denial of Veta's habeas corpus petition on the law of the case doctrine.

No other exception to that doctrine applies here. The issues, evidence and applicable law clearly did not change between the trial court's denial of Veta's

- 10 -

motions to dismiss and its denial of his habeas corpus petition. And, the trial court's denial of Veta's motions to dismiss and motion for reconsideration was not "manifestly erroneous or unjust." *Powell-Cerkoney*, 176 Ariz. at 279, 860 P.2d at 1332.

Finally, although not addressed by the parties, several other grounds support the trial court's ruling. Arizona's rules require defense counsel to "advise the court of the impending expiration of time limits in the defendant's case." Ariz. R. Crim. P. 8.1(d); *see also State v. Guerrero*, 159 Ariz. 568, 570, 769 P.2d 1014, 1016 (1989). "Failure to do so . . . should be considered by the court in determining whether to dismiss an action with prejudice pursuant to Rule 8.6." Ariz. R. Crim.P. 8.1(d); *see also State v. Vasko*, 193 Ariz. 142, ¶ 25, 971 P.2d 189, ¶ 25 (App. 1998) ("Rule 8 requires a defendant to notify the court of an impending speedy trial deadline in order to preserve his objections to a Rule 8 violation.").

Veta failed to comply with the requirement of Rule 8.1(d) before he filed his motions to dismiss for violation of his speedy trial rights. That failure alone could have constituted adequate grounds for rejecting Veta's Rule 8.3(a) argument. Moreover, when the prosecutor sought to accelerate the trial date by a few days, Veta objected to that. And finally, Veta failed to establish that the alleged "speedy trial error in [the underlying] case [would prejudice] his defense in any way or deprive[] him of a fair trial." *Vasko*, 193 Ariz. 142, ¶ 31, 971 P.2d 189, ¶31. For all these reasons, we find no abuse of discretion in the trial court's denial of Veta's habeas corpus petition.

Amended Petition, App. I, Court of Appeals' December 5, 2003, Memorandum Decision, pp. 3-9 , footnote omitted.

In addressing these issues as raised in the Petition for Review of the PCR, the Court of Appeals of Arizona stated:

To be entitled to relief based on ineffective assistance of counsel, a defendant must establish that counsel's performance was deficient in that it fell below prevailing professional norms and that this deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985). If a defendant fails to make a sufficient showing on either prong of the *Strickland* test, the claim fails. *State v. Salazar*, 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985). To avoid summary dismissal of a petition, a defendant must raise a colorable claim for relief, that is, one "that, if the allegations are true, might have changed the outcome." *State v. Runningeagle*, 176 Ariz. 59, 63, 859 P.2d 169, 173 (1993).

As he does on review, Veta claimed below that trial counsel had been ineffective because he failed to assert Veta's speedy trial rights under Rule 8, Ariz. R. Crim. P., and the Interstate Agreement on Detainers, A.R.S. § 31-481(IAD). Rejecting that claim, the trial court found that Veta had failed to establish counsel's performance had been deficient in this regard or that Veta had been prejudiced in any event. Relying on *New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659 (2000), on which Veta relied as well, the trial court found Veta was bound by counsel's agreement that trial could be conducted outside the 180-day period within which he was required to be tried under article III of the IAD. The court further found that, even assuming counsel had performed deficiently by agreeing Veta could be tried more than 180 days after he was transported to this state, Veta was not

prejudiced by any such delay.

We note at the outset that Veta has not provided us with sufficient information on review to establish that his trial was, in fact, conducted outside the time limit. Moreover, there is vast confusion about which provision of the IAD applied – the 180-day time limit of article III(a) or the 120-day limit of article IV(c).[1] In any event, Veta has not sustained his burden on review of establishing that the trial court abused its discretion when it rejected this claim. We agree with the trial court that *Hill* defeats rather than supports Veta's claim and that Veta did not meaningfully distinguish that case from his. Nor has Veta established that his rights under the Sixth Amendment were violated.

> [1]Rule 8.3(a), Ariz. R. Crim. P., provides the following with respect to a person who is outside the state:
>
>> Within 90 days after receipt of a written request from any person charged with a crime and incarcerated without the state, or within a reasonable time after otherwise learning of such person's incarceration without the state, the prosecutor shall take action as required by law to obtain such person's presence for trial. Within 90 days after the defendant had been delivered into the temporary custody of the appropriate authority of this state, he or she shall be brought to trial.
>
> Article IV(c) of the IAD provides:
>
>> In respect of any proceeding made possible by this [a]rticle, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuances.

The records shows that in its minute entry of June 28, 2002, the trial court denied Veta's motion to dismiss the charges based on a violation of the IAD. The court noted that Veta had been indicted in 1996; that a bench warrant had issued, resulting in his extradition from Kentucky pursuant to article IV of the IAD; and that, pursuant to article IV(c) of the IAD, his trial had to be held within 120 days of his arrival in Arizona on February 20, 2002. The trial court further noted, and the records reflects, that, at a pretrial conference on April 19, 2002, the court set the case for trial "at Defendant's Counsel's request and in Defendant's presence, for July 9, 2002." The court added, "in setting the trial date, neither the Court nor Defense Counsel nor the Deputy County Attorney was aware that the 120-day limit pursuant to [a]rticle IV, rather than the 180-day limit pursuant to [a]rticle III of the IAD was applicable." The trial court relied on *Hill*, in which the Supreme Court stated that "scheduling matters are plainly among those for which agreement by counsel generally controls" and that "[r]equiring express assent from the defendant himself for such routine and often repetitive scheduling determinations would consume time to no apparent purpose." 528 U.S. at 115, 120 S.Ct. at 664. The trial court also noted Veta had been present when trial was sent and the fact that he had become "unhappy with what Counsel has done makes it no less binding upon him."

Although counsel told the court at the pretrial conference on April 19, 2002, that Veta was not waiving his speedy trial rights, he and Veta than agreed the case

- 12 -

could be set for trial in July, apparently beyond the time allowed under the IAD and Rule 8.3(a). Even assuming as true Veta's assertion that counsel did this as a result of "inexperience, lack of preparation, and ineptitude," the trial court found that he was not thereby prejudiced. Veta does not challenge that finding. Moreover, even if counsel had pointed out to the court the impending deadline, at best, trial would have been set for an earlier date. Nor has Veta established how he was prejudiced by the minimal delay between the 120-day deadline and the July 2002 trial date. Indeed, on June 19, 2002, when Larry Rosenthal was permitted to withdraw as counsel for Veta and Chris Kimminau was appointed as advisory counsel upon Veta's request, Veta opposed any acceleration of the trial date. Additionally, the trial court granted numerous continuances on Veta's request, and the trial was not held until April 2004, demonstrating that Veta was not ready for trial in July 2002, much less before then, When trial began, Veta did not raise this issue.

And if Rosenthal had pointed out the impending deadline, the trial court could have found "good cause" to set the trial beyond the deadline. *See*, § 31-481, arts. III(a), IV(c). In summary, we agree with the trial court that Veta has not established he was prejudiced, even assuming Rosenthal performed deficiently by not being aware of the IAD deadline and calling it to the attention of the trial court. *Cf State v. Engram*, 171 Ariz. 363, 368 831 P.2d 366, 367 (App. 1991) (rejecting claim trial counsel had been ineffective in not filing motion to dismiss for violation of Rule 8 because continuances were granted on defendant's request and motion would not have been granted). *See also State v. Parker*, 116 Ariz. 3, 8, 567 P.2d 319, 324 (1977) (to determine whether speedy trial rights violated, court must consider length of delay, reasons for delay, defendant's assertion of right, and prejudice).

Amended Petition, App. F, Court of Appeals' September 26, 2007, Memorandum Decision, pp. 2-6.[2] In its decision on Veta's appeal, the Court of Appeals stated:

In Veta's case, the only difference between his habeas corpus petition and this appeal was that his trial was significantly delayed, at least partially at Veta's request, for nearly two years beyond the date that he originally claimed violated his speedy trial rights. Because this fact supports our previous finding that Veta had waived his speedy trial rights through his conduct, it would not have changed our decision to deny relief on his petition. Accordingly, that decision is the law of the case and we see no reason to address this issue again. *See* [*Dancing Sunshine Lounge v. Indus. Comm'n*, 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986)].

Amended Petition, App. A, Court of Appeals' June 30, 2008, Memorandum Decision, p. 4.

---

[2]The Court notes that, although the appellate court stated that neither the trial court, defense attorney, nor prosecutor were aware the trial date exceeded the deadlines, Veta asserts that it was the responsibility of Arizona to insure that his trial date was set within the deadlines once Veta invoked his speedy trial rights. Veta's assertion, however, ignores not only *Hill*, but also the requirements of Ariz.R.Crim.P. 8.1(d). Further, in his Traverse, Veta asserts that waiver was the result of fraud because the prosecutor permitted the trial to be set outside the time limits. The Court does not find this conduct constitutes fraud.

- 13 -

1    Construction of the IAD is governed by federal law. *Cuyler v. Adams*, 449 U.S.

2    433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). Generally, a state must comply with the

3    IAD's requirements when the state controls the triggering of the IAD by the filing of a

4    detainer (as in art. IV cases). *See, e.g., United States v. Mauro*, 436 U.S. 340, 343–44, 98

5    S.Ct. 1834, 56 L.Ed.2d 329 (1978). The Supreme Court has determined that a defense

6    attorney may effectively waive a defendant's right to be brought to trial within the time

7    periods specified under the IAD by agreeing to a trial date outside of the time period,

8    even without the express consent of the defendant. *Hill.*

9    Veta relies on *United States v. Mezzanatto*, 513 U.S. 196 (1995), for the general

10   proposition that waivers must be voluntary.[3] In effect, Veta argues that his invocation of

11   his speedy trial rights shows that he did not voluntarily waive his right to a speedy trial.

12   However, even pre-*Hill*, the Ninth Circuit had determined that a defendant who had

13   invoked the provisions of the IAD could still waive those rights by agreeing to a trial

14   continuance. *See Brown v. Wolff*, 706 F.2d 902 (9th Cir. 1983). Indeed, the state courts

15   all found that Veta was present when counsel suggested a trial date outside the Rule 8 and

16   IAD time limits and Veta has not disputed this finding. In other words, Veta was present

17   during both the invocation and the waiver . . . despite his stated desire to invoke his

18   speedy trial rights, Veta did not demonstrate any objection to the trial date when counsel

19   proposed the trial date.

20   . . . . .

21   . . . . .

22

23

24   [3]Respondents point out that *Mezzanatto* did not discuss waiver of IAD timelines. Veta
     asserts, however, that *Mezzanatto* sets forth the standard of review for voluntariness of an
25   agreement to waive statutory, non-constitutional rights. The Court notes that the Supreme
     Court relied on *Mezzanatto* in *Hill* for the assertion that there is a general rule that presumes
26   the availability of a waiver. However, this Court is not aware of any cases that apply
     *Mezzanatto* to an IAD waiver. Nonetheless, because the Court does not find that the record
27   shows an affirmative indication such that the waiver of the deadlines was involuntary, the
28   Court need not determine whether *Mezzanatto* is applicable in IAD cases.

Moreover, *Mezzanato* does not alter the holding in *Hill* that held that a defense attorney can effectively waive a defendant's speedy trial rights under the IAD. Veta's purported affirmative conduct of asserting his speedy trial rights during the same hearing in which the "untimely" trial date was proposed by the defense, when considered with the facts that the trial court could have scheduled the trial date beyond the deadlines for good cause, Veta did not advise the court of impending violations, Veta requested subsequent continuances, and Veta objected to an accelerated trial date does not establish that the waiver was involuntary.

Veta also relies on *People v. Sevigny*, 679 P.2d 1070 (Colo. 1984), *superseded by statute*, which held that a voluntary waiver in the context of IAD speedy trial rights "requires a showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period," and that "mere silence, by itself, does not prove a waiver." 679 P.2d at 1075.[4] In this case, however, Veta and his attorney did not stand silent. Rather, Veta's attorney, in Veta's presence, proposed a trial date outside the Rule 8 and IAD time limits. Amended Petition, App. G, p. 2. Although Veta asserts, in his Traverse, that he objected by invoking his speedy trial rights, this fails to take into account that the defense agreed to the trial date *during the same hearing*. Further, Veta does not provide any authority for his implied assertion that Colorado law controls this case.

The state appellate court found the trial court did not err in ruling, pursuant to *Hill*, that counsel had waived Veta's speedy trial rights under the IAD by agreeing to a trial date beyond the IAD's time limit. *See State v. Nelson*, 755 P.2d 1175, 1177 (Ariz. App. 1988); *State v. Carter*, 729 P.2d 336, 338 (Ariz. App. 1986) (IAD time limitations are for the benefit of the defendant and can be waived). The appellate court also determined that

_____

[4]The Court notes that the holding in *Sevigny* has since been superseded by statute in Colorado. *See People v. Newton*, 764 P.2d 1182, 1187 (Colo. 1988) (holding that under an amendment to the relevant state statute, the silence of the defendant or defense counsel in the setting of an extended trial date waives the speedy trial period under the IAD).

counsel could and did waive Veta's speedy trial rights under Rule 8.3(a).

Article IV(c) of the IAD specifically provides that "the court having jurisdiction of the matter may grant any necessary or reasonable continuance." The "'necessary or reasonable continuance' provision is, by clear implication, the sole means by which the prosecution can obtain an extension of the time limits over the defendant's objection." *Hill*, 528 U.S. at 116. Moreover, not only does art. III(a) of the IAD permits "good-cause continuances" when either the "prisoner or his counsel" is present, but the Supreme Court held that IAD scheduling decisions may be decided by counsel. *Hill*, 528 U.S. at 115. In this case, the trial court determined that counsel had agreed to a trial date beyond the IAD time limit and that this agreement took place in open court in Veta's presence. The appellate court adopted this determination.[5] Veta's argument that he is not bound by counsel's agreement to a trial date outside the IAD time limit is contrary to *Hill* in which the Court stated that scheduling matters are among those trial decisions in which a personal waiver by the defendant is not necessary. 528 U.S. at 115. The state courts' determination that Veta's speedy trial rights were waived is consistent with the federal authority.

Moreover, as the appellate court pointed out, the trial court could have scheduled the trial date beyond the deadlines for good cause, Veta requested subsequent continuances, and Veta objected to an accelerated trial date. Although Veta disputes the relevance of these finding (e.g., court did not timely consider good cause and subsequent continuances were after expiration of time limit), the Court finds that these were relevant considerations of the state court. *See Reed*, 512 U.S. at 342 (absent allegations of prejudice, IAD violation claims are not cognizable under federal habeas review).

---

[5]The "necessary and reasonable continuance" provision in art. IV(c) "is directed primarily, if not indeed exclusively, to prosecution requests that have not explicitly been agreed to by the defense." *Hill*, 528 U.S. at 115. Because the prosecution was not seeking a continuance over Veta's objection, art. IV(c)'s "necessary and reasonable continuance" provision is not applicable. *Id.*

Additionally, the appellate court determined that Veta did not advise the court of impending violations. Because Veta did not show prejudice, the appellate court denied Veta's claim that counsel was ineffective.[6]

This Court does not find that the state court rulings were objectively unreasonable. 28 U.S.C. § 2254(d); *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002) (habeas court is not to make its own independent judgment, but is to determine whether state court applied federal authority in an objectively unreasonable manner). The Court finds that Veta has failed to show that he is entitled to habeas relief on these claims.

*Jury Instruction – Hiding*

Veta asserts that the trial court erred by giving a jury instruction on the definition of "hiding" because it was unsupported by the evidence. As to this issue, the Court of Appeals of Arizona stated:

> Veta contends the trial court erred by instructing the jury that it was permitted to consider any evidence of his "hiding" in reaching a verdict. The state responds that sufficient evidence was introduced at trial to support the instruction and it was properly given.
>
> We review a trial court's decision to give a particular instruction for an abuse of discretion. *State v. Johnson*, 205 Ariz. 413, ¶ 10, 72 P.3d 343, 347 (App. 2003). A trial court may properly give an instruction on any theory that is reasonably supported by the evidence. *See State v. Cruz*, 189 Ariz. 29, 31, 938 P.2d 78, 80 (App. 1996). On appeal, we view the evidence in the light most favorable to sustaining the decisions below. *See State v. Mangum*, 214 Ariz. 165, ¶ 3, 150 P.3d 252, 253 (App. 2007). The core of Veta's argument is that there was no evidence

---

[6]Veta asserts that his ineffective assistance of counsel claim is based on counsel's ignorance of the speedy trial limits and proposing an untimely trial date. Veta asserts that counsel's proposed untimely trial date after invoking Veta's speedy trial rights shows that counsel's conduct was neither strategic nor tactical. However, Veta's argument fails to acknowledge that the trial court could have scheduled the trial date beyond the deadlines for good cause, Veta did not advise the court of impending violations, Veta requested subsequent continuances, and Veta objected to an accelerated trial date. In effect, Veta asserts that, because counsel proposed the trial date, Veta lost the right to complain of the delay during the motion to dismiss hearing. However, this argument fails to acknowledge that other factors could appropriately be considered (e.g., good cause, notice of impending deadline).

presented at trial to support the giving of this instruction.[2]

> [2]In his brief, Veta suggests that, because the facts at trial were not identical to hypothetical evidence the court outlined in ruling on the issue at trial, the evidence was not sufficient. However, as discussed below, this is not the standard of review.

The trial court instructed the jury as follow:

> In determining whether the state has proved the defendant guilty beyond a reasonable doubt, you may consider any evidence of the defendant's hiding, together with all the other evidence in the case. You may also consider the defendant's reasons for hiding. Hiding after a crime has been committed does not by itself prove guilt.

If the evidence suggests "the accused attempted to conceal himself," then this type of instruction is proper. *State v. Hunter*, 136 Ariz. 45, 49, 664 P.2d 195, 199 (1983). Such an attempt at concealment by the accused "can certainly be read as revealing a consciousness of guilt," and that is the basis for the instruction. *State v. Salazar*, 173 Ariz. 399, 409, 844 P.2d 566, 576 (1992); *see also State v. Noleen*, 142 Ariz. 101, 108, 688 P.2d 993, 1000 (1984) (instruction proper when evidence "'support[s] the inference that the accused utilized the element of concealment or attempted concealment'"), *quoting State v. Smith*, 113 Ariz. 298, 300, 552 P.2d 1192, 1194 (1976); *State v. Loyd*, 126 Ariz. 364, 367, 616 P.2d 39, 42 (1980) (fact appellant fled state and used different name sufficient to justify flight instruction); *State v. Speers*, 209 Ariz. 125, ¶ 31, 98 P.3d 560, 568 (App. 2004) (evidence must demonstrate defendants' actions made "him harder to find or camouflage[d] his activities" to justify flight instruction).

At trial, Terese, the mother of Veta's victims, testified that her eldest son, who was not a victim, had informed Veta about the accusations. After that, Veta called Terese several times, asking each time is she was recording his calls.[3] Although Veta initiated the contact with Terese and stated he wanted to see his children, he refused to tell her where he was. Terese also testified she had not seen Veta again and he had abandoned "everything" in his trailer, including his clothes, items borrowed from friends, his birth certificate, and personal photographs, after he found out about the accusations. The only item Terese could identify that Veta had apparently taken with him was "a special pillow for his neck."

> [3]Eventually, Veta made incriminating admissions during a call Terese recorded, an action she testified was prompted by his obvious concern about whether or not he was being recorded.

Retired Tucson Police Detective Carrillo, who investigated the case in 1996, had unsuccessfully attempted to locate Veta at the trailer, at the radio station where he worked, and at his parents' home in Phoenix. Carrillo was never able to find Veta during his investigation. Gula "Myke" Palmer, Veta's childhood skating coach, testified she too had attempted to contact Veta during this time, but "couldn't find him" and had contacted his parents for assistance. Based on this evidence, the jury reasonably could infer that Veta had absented himself in order to avoid facing the accusations against him. Because the evidence supported the "hiding" instruction, the court did not abuse its discretion in giving it. [Footnote omitted.]

Amended Petition, App. A, Court of Appeals' June 30, 2008, Memorandum Decision, pp.

4-7.

Because the correctness of a jury instruction under state law is not a federal question, the only issue for this Court to determine is whether there is a reasonable likelihood that the jury instruction violated Veta's right to due process. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *see also Prantil v. State of California*, 843 F.2d 314, 317 (9th Cir. 1988) (improper jury instruction is basis for habeas relief only if instruction "so infected the entire trial that the resulting conviction violates due process").

In Arizona, in determining whether a hiding or flight instruction is appropriate,

> the evidence is viewed to ascertain whether it supports a reasonable inference that the flight or attempted flight was open, such as the result of an immediate pursuit. If this is not the case then the evidence must support the inference that the accused utilized the element of concealment or attempted concealment. The absence of any evidence supporting either of these findings would mean that the giving of an instruction on flight would be prejudicial error.

*State v. Smith*, 552 P.2d 1192, 1194 (Ariz. 1976), *citation omitted*. A court must "be able to reasonably infer from the evidence that the defendant left the scene in a manner which obviously invites suspicion or announces guilt." *State v. Weible*, 688 P.2d 1005, 1008 (Ariz. 1984). The Arizona appellate court discussed the evidence from which a jury reasonably could infer that Veta had absented himself in order to avoid facing the accusations against him. In seeking habeas relief, Veta presents and argues conflicting facts and inferences. This does not address whether there was sufficient evidence to warrant the jury instruction; rather such disputes were for the jury to resolve and determine which facts and inferences, if any, to accept. This Court agrees with the state courts that the evidence supported the giving of the "hiding" instruction. The Court finds Veta has not shown that he was denied due process because of the instruction and, therefore, Veta is not entitled to habeas relief on this claim.

*Sentencing Enhancement*

Veta asserts that his sentence was enhanced in violation of his Sixth and Fourteenth Amendment rights. Specifically, Veta asserts that he did not receive notice

of any dangerous crimes against children ("DCAC") enhancement in the amended indictment. The Court of Appeals stated:

> Veta lastly complains he was improperly sentenced under A.R.S. § 13-604.01, the dangerous crimes against children statute, because he "received no notice of any . . . enhancement[] as to the amended indictment." As noted above, Veta was originally indicted on thirteen counts involving two victims, with an allegation that twelve of those offenses were dangerous crimes against children. Prior to trial, the state moved to amend Veta's indictment to accommodate changes in its interpretation of A.R.S. § 13-1417, the continuous sexual abuse of a child statute, during the eight years since he had been indicted. This amendment sought to combine the three separate counts of Continuous Sexual Abuse into a single count. The state also sought to dismiss two additional counts of sexual conduct with a minor and one count of molestation based on specific, identifiable occurrences during the same time period, to reflect the state's determination that the statute was intended "to include all counts of molestation and sexual conduct in one count of continuous sexual abuse" within a specific period of time. *See* A.R.S. § 13-1417(D); *see also State v. Ramsey*, 211 Ariz. 529, ¶ 8, 124 P.3d 756, 760 (App. 2005) ("subsection (D) . . . addresses what charges may be brought in a current proceeding involving a charge under § 13-1417"). The trial court granted the state's motion, finding "[t]he amendment of the Indictment does not operate to change the nature of the offense charged or to prejudice the Defendant." The court also noted the amendment reduced Veta's "criminal exposure" and that "[n]o new charges are being added and the Defendant specifically was on notice of all charges set forth in the original Indictment."
>
> In Veta's original indictment, the state had included a separate allegation of dangerous crimes against children for counts one through twelve. After the amendment, counts one through six of the original indictment had been replaced by an amended count one.[5] The remaining counts were unchanged. Thus, Veta's argument that he lacked notice of the dangerous crimes allegation could only apply to the amended count. However, the state's allegation clearly stated "the offenses of continuous sexual abuse of a child, as charged in Counts One, Two and Four, . . . are offenses involving a dangerous crime against children." The amendment simply merged those three original counts of continuous sexual abuse of a child into an amended count one. It is therefore clear Veta received notice that he was being charged with continuous sexual abuse of a child as a dangerous crime against children, whether it was one count or three.
>
> > [5]It appears that no written supervening indictment was filed, although the amended charges were read to the jury at the beginning of trial.
>
> Moreover, although he was aware of it, Veta did not object to this dangerous crimes enhancement at trial or at sentencing. During a discussion of potential lesser-included offenses, Veta's counsel determined there would have been no benefit to giving particular lesser-included instructions because those offenses were "still [dangerous crimes against children]" and Veta would receive no sentencing benefit if convicted of them. This undercuts Veta's argument that he lacked notice of the dangerous crimes against children allegation.
>
> Finally, on each verdict form in which the jury had found Veta guilty, the jury answered a special interrogatory about the age of the victim. As to the involving minors in drug offenses count, the jury found the victim had been under the age of fifteen. Section 13-3409(B), A.R.S., defines that crime and specifically provides

that when the minor involved is under fifteen, the offense is punishable under§ 13-604.01 as a dangerous crime against children. The jury also specifically found the victim of each count of sexual conduct with a minor was under the age of fifteen. section 13-1405, A.R.S., defines sexual conduct with a minor and states that when the victim is less than fifteen years old, the offense is punishable pursuant to § 13-604.01. The jury additionally found that the victim of the continuous sexual abuse of a child count was under the age of fourteen. However, A.R.S. § 13-1417(B) makes that offense punishable pursuant to § 13-604.01 regardless of the victim's age. Thus, even if Veta's claim that he lacked notice under the amended indictment had any merit, he nevertheless had notice that § 13-604.01 would apply to him because the statute defining the offenses he was charged with provide for sentencing under that statute. *See Raney v. Lindberg*, 206 Ariz. 193, ¶ 6, 76 P.3d 867, 870 (App. 2003) ("A charging document provides a defendant with the requisite notice [of the range of potential sentence] by citing the applicable statues pertaining to the charged crime(s) in compliance with Arizona Rules of Criminal Procedure 13.2(b).").

Amended Petition, App. A, Court of Appeals' June 30, 2008, Memorandum Decision, pp. 7-10.

Sentencing errors that are presented to a state court on direct appeal which claim a violation of state law do not present federal constitutional claims. *See Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (a state court's refusal to reverse a sentence on state law grounds is not reviewable in federal habeas). Indeed, the Ninth Circuit has refused to consider state law errors in the application of state sentencing law. *Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002). Moreover, a due process violation based on a misapplication of state law results only if the sentence is arbitrary and capricious. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). Here, the appellate court found that Veta had notice of the DCAC enhancements, *see State v. Jobe*, 157 Ariz. 328, 757 P.2d 604 (App. 1988) (actual notice prior to trial of sentence enhancing allegation ensures a defendant will not be misled, deceived or surprised), Veta's counsel was aware of the DCAC allegations when arguing about the lesser included instructions, Veta did not object to the DCAC enhancement at trial or sentencing, and the statute under which Veta was charged specifically provided for sentencing pursuant to A.R.S. § 13-604.01 (the DCAC statute).

This Court does not find that the state court rulings were objectively unreasonable. 28 U.S.C. § 2254(d); *Bell v. Cone*, 535 U.S. at 698-99 (habeas court is not to make its own independent judgment, but is to determine whether state court applied federal

authority in an objectively unreasonable manner).  The original indictment provided notice of the DCAC enhancement, the Amended Indictment merely combined three separate counts into one count, and Veta did not object to the enhancement at trial or at sentencing.  Moreover counsel demonstrated his notice of the enhancement during discussion of potential lesser-included offenses.  Lastly, Veta had notice that § 13-604.01 would apply to him because the statute defining the offenses he was charged with provides for sentencing under that statute.  The Court finds that Veta failed to show that he is entitled to habeas relief on this claim.

*Certificate of Appealability ("COA")*

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence.  28 U.S.C. § 2253(c)(1).  Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  This Court must determine, therefore, if a COA shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.  In the

certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

The Ninth Circuit has not addressed the effect of *Reed* on *Carlson* and *Cody*. The Court finds that reasonable jurists could find this Court's determination that Veta's IAD claim is not cognizable in a habeas petition is debatable or wrong. Moreover, the Court finds that reasonable jurists could find this Court's determination that Veta's claims that (1) invocation of his speedy trial rights did not make his IAD waiver involuntary and (2) Veta had not shown that he was prejudiced by the alleged deficiency of counsel are debatable or wrong. The Court finds, therefore, that a COA shall issue as to these claims.

As to Veta's claims that his rights were violated when (1) the trial court gave a "hiding" instruction unsupported by the evidence and denied Veta a new trial and (2) he was sentenced under A.R.S. § 13-604.01 after receiving no notice of "DCAC" enhancement prior to trial in his Amended Indictment, the Court finds that reasonable jurists would not find this Court's assessment of the constitutional claims debatable or wrong. A COA shall not issue as to these claims.

Any further request for a COA must be addressed to the Court of Appeals. *See* Fed. R.App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, IT IS ORDERED:

1.      Veta's Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody is DENIED;

2.      This matter is DISMISSED with prejudice;

3.      The Clerk of the Court shall enter judgment and shall then close its file in this matter, and;.

4.      A Certificate of Appealability shall issue as to Claim 1 (Veta's Fourteenth Amendment Due Process liberty interest right was violated when Arizona failed to release him after time limits of Ariz.R.Crim.P. 8.3(a) and the IAD were exceeded) and Claim 2 (Veta's Sixth and Fourteenth Amendment rights to effective assistance of counsel was

violated when Rosenthal, despite his agreement with Veta not to waive any of his speedy trial rights and invoking those rights, proposed a time frame outside Veta's time limits, effectively waiving Veta's speedy trial rights).

DATED this 1st day of March, 2010.


_____
Cindy K. Jorgenson
United States District Judge